NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARISEL HERNANDEZ RIVERA,<br><br>      Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Civil Action No. 12-6049 (SDW)<br><br>**OPINION**<br><br>August 14, 2013 |

**WIGENTON**, District Judge.

  Before this Court is Plaintiff Marisel Hernandez Rivera's ("Plaintiff" or "Rivera") appeal of the final administrative decision of the Commissioner of Social Security[1] ("Commissioner"), with respect to Administrative Law Judge Michal L. Lissek's ("ALJ Lissek") denial of Plaintiff's claim for Social Security Disability Insurance Benefits ("SSDI") pursuant to 42 U.S.C. § 405(g).

  This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons stated below, the final decision of the Commissioner is **reversed** and **remanded** for further proceedings.

---

[1] As Defense Counsel noted, Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this suit. No further action needs to be taken to continue this suit. See 42 U.S.C. § 405(g).

**FACTUAL HISTORY**

    **A. Personal and Employment History**

Plaintiff was born on November 10, 1969. (R. 20, 209.) She lives with her companion and her two children who are nine years old and four years old, respectively. (R. 71, 73.) Plaintiff and her companion both engage in shopping, cooking, and cleaning duties. (R. 73.) Plaintiff speaks Spanish and is not able to communicate in English. (R. 20.)

Until 2004, Plaintiff was an assembler of small products at a shoe factory in Puerto Rico.[2] (R. 36, 68-69.) At the shoe factory, Plaintiff was responsible for placing glue onto the soles of military boots. (R. 37, 68-69.) Plaintiff stood throughout her eight-hour shifts, and occasionally would work up to twelve hours because of overtime. (R. 69.) In approximately 2006 or 2007, Plaintiff took a job cleaning and cooking for a ninety-year old woman in Puerto Rico. (R. 36-37, 69.) She performed these duties for one year, working three times a week, and was paid "off the books." (Id.)

    **B. Medical History**

In 1997 and 1998, Plaintiff was treated for orthopedic problems in Puerto Rico. (R. 19, 261-304, 343-44, 409-27.) After these treatments and until the alleged onset date of disability on December 31, 2004, Plaintiff's treatment notes do not indicate any orthopedic problems until 2007, after her last insured date. (See R. 19.) Treatment notes from 2007 reference spondylosis, low back pain, right hip pain, and osteoporosis with high fracture risk. (Id.)

On March 7, 2008, Plaintiff visited the Jewish Renaissance Medical Center ("JRMC") for an initial history and physical evaluation. (R. 19, 394, 471.) At this visit, Plaintiff informed Dr. Veronica Vergara, M.D. ("Dr. Vergara") of her scoliosis as a child and her back pain. (Id.)

---

[2] The record does not indicate when Plaintiff began working at the shoe factory in Puerto Rico.

On March 20, 2008, a magnetic resonance imaging ("MRI") of Plaintiff's lumbar spine revealed slight anterolisthesis at L5-S1 secondary to bilateral spondylosis, mild central canal narrowing, and mild dextroscoliosis. (R. 19, 305-06.) On March 31, 2008, a bone mineral densitometry scan requested by Dr. Vergara revealed findings consistent with osteoporosis of the lumbar spine and a high fracture risk. (R. 19, 440.)

On May 29, 2008, Plaintiff underwent a consultative orthopedic examination with Dr. Marc Weber, M.D. ("Dr. Weber"). (R. 19, 307.) Dr. Weber noted that Plaintiff "looked uncomfortable" during the examination and sat on the side of her left leg. (R. 308.) Dr. Weber also noted osteoarthritic changes in the fourth and fifth digits of both hands, specifically in the fifth digit of her left hand. (R. 19, 308.) Dr. Weber observed tenderness on palpation of the distal interphalangeal joints on both hands. (Id.) Dr. Weber also observed a lumbar curve to the right and tenderness upon palpation of the mid-thoracic paraspinal muscles on the right. (Id.) Additionally, tenderness on palpation over the coccyx was observed. (Id.) Dr. Weber noted that Plaintiff's gait pattern was within normal limits. (Id.) Dr. Weber's impression was that Plaintiff had "chronic back pain, a history of scoliosis, anterolisthesis at L5-S1, osteoporosis and arthritis involving the hands." (Id.)

On August 13, 2008, Plaintiff went to the JRMC complaining of back pain and mild tenderness of the lower back. (R. 20, 387, 456-57.) The assessment noted chronic back pain and osteoporosis. (Id.) On August 18, 2008, Dr. Falguni Patel, M.D., performed a hysterectomy on Plaintiff after she received a preoperative diagnosis of "Carcinoma in SITU of the Cervix." (R. 20, 729-30.) On September 8, 2008, Plaintiff visited the JRMC where clinical notes indicated that Plaintiff continued to complain of back pain. (R. 20, 386, 458-59.)

On January 9, 2009, Plaintiff underwent an initial evaluation by Dr. Ahraf Sakr, M.D., ("Dr. Sakr") who diagnosed Plaintiff with myofascial pain syndrome. (R. 20, 657.) Dr. Sakr

3

noted that Plaintiff had reported physical therapy helped with the pain relief; therefore, he scheduled Plaintiff for a series of trigger point injections. (R. 20, 657-58.)

On April 13, 2009, clinical notes from Dr. Arthur Santora, M.D. ("Dr. Santora"), indicated that Plaintiff had osteoporosis of the lumbar spine and osteoarthritis of the hand. (R. 20, 491-95.) Dr. Santora noted that Plaintiff was currently taking Fosamax, Naprosyn, Propoxacet-n, Oscal and Cylobenzaprine. (R. 20, 493.)

On August 25, 2009, after a bone densitometry ordered by Dr. Vergara, Stuart M. Kotler, M.D. ("Dr. Kotler"), indicated that Plaintiff had osteopenia. (R. 20, 705-06, 744.) On September 22, 2009, Dr. Mohammed Islam, M.D. ("Dr. Islam") noted that Plaintiff's bone densitometry test indicated osteopenia.

On December 21, 2009, Plaintiff went back to the JRMC for a routine visit for medication refills. (R. 20, 510.) Clinical notes indicated that Plaintiff was asymptomatic. (See R. 20, 511.) On January 22, 2010, JRMC clinical notes indicated that Plaintiff had abdominal pain and back pain. (R. 20, 508.) Plaintiff was prescribed Ultracet and Prilosec and was told to stop taking the Naproxyn, which may have been causing her epigastric pain. (See R. 20, 509.)

On a May 7, 2010 visit to the JRMC, clinical notes indicated that Plaintiff was seen for medication refills with complains of continuous back aches and a new mass in the anterior portion of the right tibia. (R. 20, 711.) Additionally, the clinical notes indicated that Plaintiff's symptoms were unremarkable, with a full range of motion of all joints, no focal deficits, and normal muscle strength. (R. 20, 711-12.) The impression included osteopenia, scoliois, and other symptoms referable to the ankle and foot joint. (R. 20, 712-13.)

### C. Testimonial History

On March 11, 2010, ALJ Lissek held a hearing in connection with this matter. Plaintiff testified at the hearing. Plaintiff testified that she has had scoliosis since she was nine years old,

she has arthritis in her shoulders and hands, and "as time keeps passing, the [arthritis] pain is increasing." (R. 70.)  Plaintiff claimed she "can't work because I have arthritis, pain in the hips.  I can be sitting down, but I can't use a lot of force because [ ] my shoulders and my hands [ ] are always in pain because of [the] arthritis." (Id.)  Plaintiff added that, "[i]f I [ ] sit in hard places for a while, my back starts hurting." (R. 71.)  She later clarified that her hip also starts hurting after sitting for a prolonged period. (See id.)  Plaintiff sits in chairs with "one leg extended and one leg under the chair" to prevent putting pressure on her hips. (R. 72.)  Plaintiff testified that "I always have pain[ ] in my hands . . . [and] [f]or some things, I don't have the strength to open [ ] [them] up because I [have] pain in my fingers." (Id.)  Plaintiff indicated that she has trouble opening jars and therefore uses a machine to do it. (Id.)  Moreover, she struggles tightening her hand and has trouble bending down. (R. 72-73.)  Finally, Plaintiff indicated that she had uterine cancer, but since her hysterectomy, there has been no cancer reoccurrence. (R. 67.)

ALJ Lissek held a supplemental hearing on August 25, 2010 with the purpose of seeking testimony from Vocational Expert Patricia B. Sasona ("VE"). (R. 30-31.)  ALJ Lissek asked the VE to list potential employment opportunities for a hypothetical claimant with Plaintiff's previous work experience, ability to do "sedentary work," and "do handling and fingering *frequently*." (R. 38-39 (emphasis added).)  The VE testified that a hypothetical claimant with Plaintiff's profile could perform the jobs of "final assembler," "ampoule sealer," or "table worker." (R. 39-46.)  Further, the VE testified that each of these occupations existed in significant numbers in the regional and national economy. (Id.)  Next, ALJ Lissek asked the VE about the potential employment opportunities for a second hypothetical claimant with Plaintiff's previous work experience and ability to "do handling and fingering only *occasionally*." (R. 43 (emphasis added).)  The VE responded that "this . . . would effectively eliminate any possibility of employment at the unskilled, sedentary level for such an individual." (R. 43.)

5

Taking into account the medical evidence and the VE's testimony, ALJ Lissek found that Plaintiff had the Residual Functional Capacity ("RFC") to perform work that exists in significant numbers in the national economy. (R. 21-22.)

**PROCEDURAL HISTORY**

On March 6, 2008, Plaintiff filed an application for SSDI benefits alleging disability since December 31, 2004 based on orthopedic and neurological conditions. (R. 185-92.) The Social Security Administration (the "SSA") denied Plaintiff's application initially and on reconsideration. (R. 89-91.) Plaintiff requested a hearing before an ALJ, which was held on March 11, 2010 and a supplemental hearing held on August 25, 2010. (R. 28-74.) On October 29, 2010, ALJ Lissek issued a decision finding that Plaintiff was not disabled because her RFC was consistent with jobs in the national economy. (R. 9-27.) On July 24, 2012, the Appeals Council denied Plaintiff's request for review and Plaintiff subsequently filed an appeal in the District of New Jersey. (R. 1-7.)

**LEGAL STANDARD**

In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Bailey v. Comm'r of Soc. Sec., 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting

6

Richardson v. Perales, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" Bailey, 354 F. App'x. at 616 (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." Cruz v. Comm'r of Soc. Sec., 244 F. App'x. 475, 479 (3d Cir. 2007) (citing Hartranft, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. See Scott v. Astrue, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." Cruz, 244 F. App'x. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

**DISCUSSION**

An individual is considered disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged[.]" 42 U.S.C. § 423(d)(5)(A).

In determining disability, the SSA utilizes a five-step sequential analysis. See 20 C.F.R. § 416.920; see also Cruz, 244 F. App'x. at 479. A determination of non-disability at steps one, two, four, or five in the five-step analysis ends the inquiry. See 20 C.F.R. § 416.920. A determination of disability at steps three and five results in a finding of disability. See id. Contrarily, if an affirmative answer is determined at steps one, two, or four the SSA proceeds to the next step in the analysis. See id.

The primary issued raised in Plaintiff's appeal is whether the Commissioner's decision is supported by substantial evidence.

**A. Step One: Whether Plaintiff has performed any "substantial gainful activity"**

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). See 20 C.F.R. 416.920(b). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant

8

physical or mental activities.  See 20 C.F.R. 416.972(a).  If an individual engages in SGA, she is not disabled regardless of the severity of her physical or mental impairments.  See Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  If the individual is not engaging in SGA, the ALJ proceeds to the next step.  See id.

Here, ALJ Lissek properly found that Plaintiff had not engaged in SGA since December 31, 2004, the alleged onset date of her disability.  (R. 17.)

**B. Step Two:   Whether Plaintiff has a "severe" impairment or combination of impairments affecting his ability to do basic work activities**

At step two, the ALJ must determine whether the claimant has a medically determinable severe impairment or a severe combination of impairments.  See 20 C.F.R. 416.920(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  See 20 C.F.R. 416.921.  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work.  See id.  If the claimant does not have a severe impairment or severe combination of impairments, she is not disabled.  See 20 C.F.R. 416. 972(c).  If the claimant has a severe impairment or severe combination of impairments, the analysis proceeds to the third step.  See id.

At step two, ALJ Lissek determined that Plaintiff had the following severe impairments: osteroarthritis, osteopenia, scoliosis, and spondylosis.  (R. 18.)  Plaintiff argues that ALJ Lissek erred in failing to find that Plaintiff suffered from severe osteoporosis.  (Pl. Br. 8-9.)  However, Plaintiff's medical records documenting her most recent bone density test indicated osteopenia and not osteoporosis.  (R. 694, 705, 742-44.)  This diagnosis was reflected in Dr. Islam's September

22, 2009 report. (R. 742-43.) Accordingly, this Court finds that ALJ Lissek properly evaluated the evidence before her in assessing Plaintiff's severe impairments.

### C. Step Three: Whether Plaintiff's impairment matches or is equivalent to a listed impairment

At step three, the ALJ must "compare the claimant's medical evidence to a list of impairments presumed severe enough to negate any gainful work." Caruso v. Comm'r of Soc. Sec., 99 F. App'x. 376, 379 (3d Cir. 2004). When a claimant's impairments meet or equal a listing, "disability is conclusively established and the claimant is awarded benefits." Knepp, 204 F.3d at 85. The Third Circuit requires the ALJ to "fully develop the record and explain his findings at step three." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000). The ALJ is required to issue more than just a conclusory statement that a claimant does not meet the listings. See Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (citing Burnett, 220 F.3d at 119-20).

Here, ALJ Lissek determined that Plaintiff did not have impairments that matched or were equivalent to a listed impairment. (R. 18.) ALJ Lissek noted that "[Plaintiff's] impairments, singly or in combination, do not meet or equal the regulatory requirements of any listing." (R. 18.)

Plaintiff argues that ALJ Lissek did not include a sufficient analysis at step three. (Pl. Br. 10-13.) This Court agrees. ALJ Lissek's decision does not provide any analysis or comparison to any listed impairments. Instead, a single conclusory statement asserting that Plaintiff's impairments do not meet the requirements of any listing is provided. Further explanation as to how ALJ Lissek reached her conclusion here is warranted. On remand, the ALJ should provide additional details and analysis regarding why Plaintiff's impairments do not meet the statutory listings.

**D. Whether the ALJ properly determined Plaintiff's RFC**

After step three, but before considering step four, the ALJ must first determine the claimant's RFC. See 20 C.F.R. § 416.920(e); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. See 20 C.F.R. § 404.1545. In making this determination, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. See 20 C.F.R. § 416.920(e), 416.945.

Here, ALJ Lissek determined that Plaintiff "has the residual functional capacity to, in an eight hour workday, sit up to six hours, stand/walk up to two hours and lift/carry up to ten pounds." (R. 18.) ALJ Lissek stated that Plaintiff "is able to perform work involving frequent handling and fingering; no climbing of ladders or scaffolds, no crawling, balancing, working around unprotected heights or around moving mechanical parts; and occasional bending." (Id.) ALJ Lissek assessed that Plaintiff "is limited to work that involves simple instructions and that can be learned in one month or less." (Id.)

In making this assessment, ALJ Lissek reviewed and relied on multiple medical reports and testing. For instance, ALJ Lissek pointed to a March 20, 2008 MRI of the lumbar spine that revealed slight anterolisthesis secondary to bilateral spondylosis, mild central canal narrowing, and mild dextroscoliosis. (R. 19.) Additionally, ALJ Lissek considered Plaintiff's history of scoliosis. (R. 18-19.) ALJ Lissek also referenced: a March 31, 2008 bone density test indicating osteopenia and not osteoporosis (R. 19, 323); Plaintiff's asymptomatic diagnosis on December 21, 2009 (R. 20); and Plaintiff's course of treatment which consisted of several clinical notes including Plaintiffs' subjective complaints, and clinical findings. (R. 19-20.)

### 1. Credibility Determination

Plaintiff argues that ALJ Lissek inappropriately found that she lacked credibility because her statements contradicted a pre-determined RFC. (Pl. Br. 10, 27.) The ALJ must "consider . . . all symptoms, including pain, and the extent to which [ ] [such] symptoms can reasonably be accepted as consistent with objective medical evidence." 20 C.F.R. § 404.1529(a). "While a claimant's subjective complaints must be given serious consideration, they must also be supported by medical evidence." Johnson v. Comm'r of Soc. Sec., 398 Fed. Appx. 727, 735 (3d. Cir. 2010) (citing Smith v. Califano, 637 F.2d 968, 972 (3d. Cir. 1981); Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992)). The ALJ may not discredit a claimant's subjective complaints based on his/her "own medical judgment; it must be discredited by contradictory medical evidence." Cruz, 244 Fed. Appx. at 481 (quoting Kent, 710 F.2d at 115). "[T]he ALJ must also consider and weigh all of the [medical and] non-medical evidence before him." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). If there are inconsistencies in the evidence, the ALJ must mention and analyze the contradictory evidence that tends to discredit the claimant. Id.

"The ALJ's assessment of credibility is an essential function of the Judge," and "[t]he ALJ's conclusions on a [p]laintiff's lack of credibility are within the ALJ's unique province." Sullivan v. Astrue, 2010 U.S. Dist. LEXIS 71211, at *20 (D.N.J. July 15, 2010); see also Gainey v. Astrue, 2011 U.S. Dist. LEXIS 44369, at *39-40 (D.N.J. Apr. 25, 2011) ("The ALJ has the authority to make credibility determinations of a plaintiff's testimony, [e]specifically with regard to pain and other subjective complaints.") (citing Malloy, 306 Fed. Appx. at 765).

In the instant matter, this Court finds that ALJ Lissek failed to properly explain whether she considered Plaintiff's subjective complaints in her decision. ALJ Lissek noted that "the claimant's statements concerning the intensity, persistence and limiting effects of the[] symptoms are no[t] credible to the extent that they are inconsistent with the [ ] RFC." (R. 18-19.) However,

12

no further details or analysis supports this conclusion. As Plaintiff points out, "[t]his paragraph could apply [generally] to any case before any ALJ." (Pl. Br. 28.) Under Cruz, despite finding a claimant's testimony "not credible," an ALJ is required to use contradictory medical evidence to discredit this testimony. 244 Fed. Appx. at 481 (quoting Kent, 710 F.2d at 115).

For instance, Plaintiff testified that "she couldn't work because of her arthritic condition in her back and hips . . . [t]he longer she sits, the more the pain intensifies . . . [s]he cannot sit for more than 15 or 20 minutes . . . [and] [h]er hands ache and cannot open ajar (sic)." (Pl. Br. 28-29.) Even with this testimony and confirmatory medical evidence, including "the Commissioner's own doctor describ[ing] plaintiff's back pain as 'chronic,'" (R. 19, 308), ALJ Lissek concluded that plaintiff could perform "frequent handling and fingering" or work two thirds of an eight hour day with her hands. (R. 18.) This Court recognizes that ALJ Lissek had the discretion to evaluate credibility in light of the evidence and to arrive at an independent judgment based on the medical evidence, clinical notes, and clinical findings. LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988) (citations omitted). However, based on ALJ Lissek's decision, it is unclear as to whether she appropriately considered Plaintiff's testimony. Accordingly, ALJ Lissek must properly consider Plaintiff's subjective complaints even if ultimately finding them to be not credible. As such, on remand, it is necessary for the ALJ to provide further analysis at step four that would permit a meaningful review by this Court.

**E. Step Four: Whether Plaintiff had the RFC to perform the requirements of her past relevant work**

At step four, the ALJ must determine whether the claimant has the RFC to perform the requirements of her past relevant work. See 20 C.F.R. 416.920(f). "Past relevant work" means work performed within the fifteen years prior to the date that disability must be established. See id.

13

In this case, ALJ Lissek determined that Plaintiff had no past relevant work. (R. 20.)

**F. Step Five: Whether Plaintiff is able to do any other work considering her RFC, age, education, and work experience**

At step five, the Commissioner must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. See 20 C.F.R. § 416.920(g). If the claimant establishes the first four steps and demonstrates that her impairment prevents her from performing any of her past work, the burden shifts to the Commissioner at step five to determine whether the claimant is capable of performing alternative, substantial, gainful, activity present in the national economy. See 20 C.F.R. § 416.920(g); Kangas, 823 F.2d at 777; Malloy v. Comm'r of Soc. Sec., 306 F. App'x. 761, 763 (3d Cir. 2009). The regulations allow the use of a vocational expert in reaching this decision. See 20 C.F.R. § 404.1566(e).

The ALJ must consider whether the claimant has exertional or nonexertional limitations. See C.F.R. § 404.1569a(a). A limitation is exertional if it affects the claimant's "ability to meet the strength demands of [a job]" such as "sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. A limitation is nonexertional if it affects the claimant's "ability to meet the demands of [a job] other than strength demands." Id. If the limitations are solely exertional, the ALJ can use medical-vocational guidelines to determine whether the claimant can perform any other job in the national economy. Id. Also, if the claimant retains the mental capacity to perform unskilled work, the ALJ may rely on the medical-vocational guidelines. See Davis v. Astrue, No. 08-928, 2009 WL 3241853 *at 6 (W.D. Pa. Oct. 5, 2009). However, if there are both exertional and nonexertional limitations, the ALJ cannot depend on the guidelines to determine whether there are jobs in the national economy that the claimant can perform. See Sykes v. Apfel, 228 F.3d 259, 269 (3d Cir. 2000).

In the instant matter, after considering Plaintiff's age, education, work experience, and RFC, ALJ Lissek concluded that there are a significant number of jobs in the national economy that Plaintiff could perform. (R. 21.) ALJ Lissek relied on answers to hypothetical questions that were presented to the VE regarding alternative occupations that an individual with Plaintiff's limitations could perform. (R. 38-39.) The VE concluded that an individual with Plaintiff's limitations could find work as a final assembler, ampoule sealer, and as a table worker assuming that she could engage in frequent handling or fingering. (R. 21, 39-42.)

Based on the record, this Court finds that the VE's conclusions do not comport with earlier findings. According to Plaintiff, her condition makes it difficult for her to stand and "[t]he longer she sits, the more the pain intensifies[.]" (Pl. Br. 28-29.) Because ALJ Lissek did not contradict these statements and the VE's potential employment opportunities involve sitting for six hours, this Court finds the VE's conclusions cannot be reconciled with earlier findings. Additionally, a review of the hearing transcripts does not clarify why ALJ Lissek concluded that Plaintiff could engage in "frequent" handling rather than "occasional" or "constant" handling. Importantly, ALJ Lissek did not find any impairment that would hinder Plaintiff's ability to use her hands. Based on these inconsistent findings, this Court remands this matter for further analysis to provide clarity and analysis regarding the VE's conclusions in light of the ALJ's previous determinations.

**CONCLUSION**

For the foregoing reasons, this Court **REVERSES** ALJ Lissek's decision and **REMANDS** this matter for further proceedings consistent with this Opinion.

s/ Susan D. Wigenton, U.S.D.J.